[Cite as *Ragouzis v. Madison House Condominium Owners Assn., Inc.*, 2026-Ohio-2477.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EDGAR T. RAGOUZIS, | : | APPEAL NO. C-250333 |
| | | TRIAL NO. A-2204283 |
|     Plaintiff-Counterclaim-Defendant-Appellant, | : | |
| | : | |
|  and | | *JUDGMENT ENTRY* |
| | : | |
| BERTHA G. HELMICK, et al., | : | |
| | : | |
|     Plaintiffs, | : | |
| | : | |
|  vs. | : | |
| | : | |
| THE MADISON HOUSE CONDOMINIUM OWNERS' ASSOCIATION, INC., et al., | : | |
| | : | |
|     Defendants, | : | |
| | : | |
|  and, | : | |
| | : | |
| KELLY MAHER, et al., | : | |
| | : | |
|     Interested Party Defendants-Counterclaim-Plaintiffs-Appellees. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

# OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 6/30/2026 per order of the court.**

**By:**_____
 **Presiding Judge**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EDGAR T. RAGOUZIS, | : | APPEAL NO. C-250333 |
| | | TRIAL NO. A-2204283 |
| Plaintiff-Counterclaim-Defendant-Appellant, | : | |
| | : | |
| and | | *O P I N I O N* |
| | : | |
| BERTHA G. HELMICK, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | |
| THE MADISON HOUSE CONDOMINIUM OWNERS' ASSOCIATION, INC., et al., | : | |
| Defendants, | : | |
| and, | : | |
| KELLY MAHER, et al.,[1] | : | |
| Interested Party Defendants-Counterclaim-Plaintiffs-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 30, 2026

*Droder & Miller Co., LPA, Edward J. Collins, Bradley A. Powell*, and *K. Joshua Waters*, for Plaintiff-Counterclaim-Defendant-Appellant,

---

[1] 153 parties appear before this court as interested party defendants-counterclaim-plaintiffs-appellees. The full list of these parties is in the appendix to the opinion.

*Cummins Law LLC, James R. Cummins, Rebecca S. Rhein*, and *Ethan K. Losier*, for 153 Interested Party Defendants-Counterclaim-Plaintiffs-Appellees.

**MOORE, Presiding Judge.**

{¶1} Plaintiff-appellant Edward T. Ragouzis appeals the trial court's entry of partial summary judgment against him, declaring him a vexatious litigator. Because the record clearly and convincingly supports the trial court's judgment, we affirm the trial court's judgment.

### I.  Factual and Procedural History

### A.  The Complaint

{¶2} The Madison House Condominium is a 175-unit high-rise residential building located in Cincinnati, Ohio. Ragouzis owns and resides in two adjoined units in the building.

{¶3} On November 21, 2022, Ragouzis and six other unit owners ("plaintiffs") filed a 22-count complaint against The Madison House Condominium Owners' Association, Inc., ("Madison House") its board of directors, the building's management company, and 153 other unit owners at the condominium complex.

{¶4} On January 12, 2023, 137[2] of the unit owners[3] ("the interested parties") answered the complaint and filed counterclaims against plaintiffs. The counterclaims alleged that plaintiffs engaged in a conspiracy of harassing conduct and conducted a campaign to diminish the value of other owners' units for "his" own personal economic benefit. Ragouzis was specifically named in many of the allegations.

{¶5} On February 28, 2024, the trial court granted counsel for Ragouzis's request to withdraw. Ragouzis's former counsel indicated that Ragouzis's repeated threats made representation nearly impossible. Following his counsel's withdrawal,

---

[2] Interested party defendants-counterclaim-plaintiffs-appellees' responsive brief explains, "Though there were originally 137 Counterclaim Plaintiffs that filed counterclaims against Mr. Ragouzis, at the time of this appeal, 153 of Mr. Ragouzis's neighbors filed the same counterclaims."

[3] These parties appear in the caption as "Interested Party Defendants-Counterclaim-Plaintiffs-Appellees."  For clarity, we will hereinafter refer to these parties as "the interested parties."

Ragouzis proceeded pro se.

*1. Ragouzis Files Numerous Motions and Sends Numerous Emails to Opposing Counsel and Parties*

**{¶6}** Between March 26, 2024, and May 8, 2025, Ragouzis filed approximately 49 motions and other filings. The filings included multiple surreplies filed without leave of court, several motions seeking to stay or continue proceedings where such requests had already been denied, and motions to rehear or reconsider issues that the trial court had already decided. In addition, Ragouzis filed motions contrary to standing orders or without the required meet-and-confer procedures. Ragouzis also filed discovery requests that had previously been stricken that he had served on three separate occasions on the same party. Ragouzis also served and filed subpoenas that sought information that had no relevance to the pending action.

**{¶7}** On July 30, 2024, the trial court granted defendant The Madison House Condominium Owner's Association, Inc.'s, motion for a preliminary injunction against Ragouzis. The trial court found that Ragouzis had (1) repeatedly impeded the condominium's easements and interfered with contractors and vendors on the premises, (2) repeatedly denied Madison House access for necessary repairs, (3) registered complaints with the City of Cincinnati and threatened to "add the City back into" the lawsuit if it did not meet his demands, (4) repeatedly threatened Madison House's counsel with disciplinary complaints, (5) repeatedly attempted to contact Madison House's insurer with various demands directly, and (6) threatened other condominium residents.

**{¶8}** The court enjoined Ragouzis from preventing Madison House and its contractors or vendors from conducting any necessary inspections, maintenance, or repairs, from communicating with the contractors or vendors, and from engaging in

6

any further nuisance behavior.

**{¶9}** In addition to the approximately 49 filings, Ragouzis sent approximately 25 emails to counsel and parties that the recipients considered threatening and harassing. The email correspondence included insults and threats of physical violence, to "weaponize" litigation, and to file disciplinary complaints.

**{¶10}** On September 5, 2024, the trial court dismissed Ragouzis's approximately 34 pending filings to that date with prejudice, after finding that Ragouzis was in contempt of court for violating the preliminary injunction by continuing to interfere with repairs that needed to be made in Ragouzis's unit. Then, on September 13, 2024, the 153 interested parties filed a motion for partial summary judgment to declare Ragouzis a vexatious litigator.

**{¶11}** On November 20, 2024, in violation of the August 28, 2024 court order prohibiting direct contact with the interested parties regarding the litigation, Ragouzis sent an email to over 100 individuals stating, in part, "I can refile suit against every owner as you have participated in the Cummins class action . . . I'm not done here." In December 2024, the interested parties filed a motion requesting that the court direct Ragouzis to show cause why he should not be found in contempt of the court's orders, be fined, and be declared a vexatious litigator.

**{¶12}** During the May 8, 2025 hearing on the motion for summary judgment, counsel for the interested parties stated that Ragouzis's 83-year-old former neighbor submitted an affidavit in a prior case involving Ragouzis. Counsel explained that the affidavit discussed threatening and harassing text messages that Ragouzis sent to his former neighbor, that the affidavit was in the record in the instant matter, and that Ragouzis had admitted to sending the text messages. Counsel then read the text messages into the record.

7

**{¶13}** Counsel for the interested parties presented charts listing approximately 49 filings made and 25 emails sent by Ragouzis. Ragouzis admitted that he authored the emails. The interested parties argued that Ragouzis had also served discovery on his former neighbor, who had dementia and lived outside Ohio. The interested parties alleged that Ragouzis asked her to admit that she wanted Ragouzis's daughter to sleep with her. They also argued that he publicly filed the requests three times despite his failure to file a deposition notice to indicate that he intended to depose the neighbor.

**{¶14}** Ragouzis addressed the 18 motions that the interested parties challenged, arguing that they were legally justified based largely on Civ.R. 14, timing issues, and the need to get certain things in order—including his insurance claim—before Madison House's contractors did any work on his condominium. He claimed his threatening emails were sent "out of frustration" and that he is "not really familiar with a lawyer's code of responsibility." He argued that his former 83-year-old neighbor's affidavit[4] was "unproven," though he stated he had attempted to obtain discovery from her and her daughter ten times. Ragouzis stated that the court was aware of the discovery requests and recommended that he seek leave of court to make those filings.

**{¶15}** Ragouzis explained that the November 20, 2024 mass email was a "mistake" and he called a witness to show that it was harmless. A unit owner testified that she received Ragouzis's email, and that she believed that Ragouzis was acting in defense of his property rights, and on behalf of the rights of other residents. However,

---

[4] While it is not clear from the record when Ragouzis moved to strike his former neighbor's affidavit, the trial court denied this request in a June 2025 entry, finding that Ragouzis did not provide sufficient reasons why striking the affidavit would be relevant at that time.

the unit owner admitted she was concerned by the email and described Ragouzis's approach as "unfortunate."

**{¶16}** The court imposed a limit on the filing of new motions during the pendency of the hearings scheduled through July 9, 2025, allowing only filings necessary for upcoming hearings and only one motion per side for each upcoming hearing.

**{¶17}** On May 13, 2025, the trial court entered its order declaring Ragouzis a vexatious litigator, finding by clear and convincing evidence that Ragouzis had engaged in habitual, persistent, and unreasonable vexatious conduct throughout the litigation, demonstrated disregard for judicial rules of conduct and procedure, and substituted supportable legal theories with ad hominem attacks on the court, litigants, and counsel. The trial court attached the interested parties' exhibit showing Ragouzis's approximately 49 filings to its entry granting their motion for summary judgment.

**{¶18}** This appeal followed.[5]

## II. Analysis

**{¶19}** In his sole assignment of error, Ragouzis argues that the trial court erred by granting the interested parties' motion for summary judgment declaring Ragouzis a vexatious litigator. An appellate court conducts a de novo review of summary-judgment decisions. *WSB Rehab. Servs. v. Cent. Accounting Sys.*, 2022-Ohio-2160, ¶ 22 (1st Dist.). A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's

---

[5] Upon completion of the briefing in this appeal, Madison House moved to strike Ragouzis's reply brief, asserting that it was the first instance that he argued that the interested parties' allegations were not addressed in the trial court's decision, and summary judgment was not proper because the interested parties failed to present evidence that Ragouzis engaged in vexatious conduct prior to their counterclaim being filed. This court denied the motion to strike, stating that we will only consider arguments properly included in the reply brief pursuant to App.R. 16(C).

9

decision. *Doe v. Marker*, 2003-Ohio-6230, ¶ 13 (11th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *WSB* at ¶ 22.

## A. The Trial Court Properly Applied the Vexatious-Litigator Statute

### 1. Standard of Review

{¶20} Under R.C. 2323.52(A)(3), a vexatious litigator is "any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions." It is the nature of the conduct—not the number of actions—which determines whether a person is a vexatious litigator. *Uh Oh Ohio, LLC v. Buchanan*, 2024-Ohio-11, ¶ 15 (1st Dist.). However, the number of actions may be relevant in determining whether a person habitually and persistently engages in vexatious conduct. *Id.* The filing of unnecessary, inappropriate, or supernumerary pleadings and motions that raise or reraise arguments that the court has repeatedly rejected is considered vexatious conduct. *Id.* Filings that consistently repeat arguments and legal theories that were previously rejected by the court numerous times can also constitute vexatious conduct. *Id.*

{¶21} A two-pronged test must be satisfied before a trial court may declare someone a vexatious litigator. *Chia-Chi Ho v. Evans*, 2024-Ohio-5184, ¶ 9 (1st Dist.); *see City of Madeira v. Oppenheimer*, 2021-Ohio-2958, ¶ 7 (1st Dist.). First, the litigant must have engaged in vexatious conduct in a civil action or actions. *Evans* at ¶ 9. Vexatious conduct includes conduct that "obviously serves merely to harass or

10

maliciously injure another party," "is not warranted under existing law and cannot be supported by good faith arguments for an extension, modification, or reversal of existing law," or is "imposed solely for delay." *Id.*; R.C. 2323.52(A)(2). Second, the vexatious conduct must have been habitual, persistent, and without reasonable grounds. *Evans* at ¶ 9. The court must evaluate the litigant's conduct across the entirety of the cases, considering the nature of the actions filed. *Id.* A vexatious-litigator determination is "an extraordinary remedy that should be applied in very limited circumstances, supported by clear and convincing evidence." *Evans* at ¶ 10, quoting *In re T.D.J.*, 2016-Ohio-293, ¶ 7 (8th Dist.).

### 2. *Habitual and Persistent Conduct May Occur Within a Single Case*

{¶22} "Habitual," in the context of the vexatious-litigator statute, means "established by or repeated by force of habit." *Oppenheimer* at ¶ 25. However, conduct need not encompass multiple cases to be considered habitual because it can be based on actions in a single case. *Id.*; *see Prime Equip. Group, Inc. v. Schmidt*, 2016-Ohio-3472, ¶ 40-41 (10th Dist.); S*tate ex rel. Ware v. Vigluicci*, 2024-Ohio-5492, ¶ 10. Further, "persistent conduct" means "continuing in a course of action without regard to opposition or previous failure; tenacious of position or purpose." *Oppenheimer* at ¶ 25, quoting *Davie v. Nationwide Ins. Co. of Am.*, 2017-Ohio-7721, ¶ 63 (8th Dist.), quoting *Webster's Third New International Dictionary* 1017 (2d Ed. 1993).

{¶23} Ragouzis's approximately 49 filings represent habitual conduct over 13 months, from March 26, 2024, through May 8, 2025. The fact that Ragouzis had been found in contempt, and approximately 15 of the filings were made after 34 of his claims had been dismissed with prejudice, demonstrates persistent conduct despite the disposition of the underlying action. The filings also reflect Ragouzis's repeated use of arguments and legal theories that the court had repeatedly rejected. *See Buchanan*,

2024-Ohio-11, at ¶ 15 (1st Dist.). Ragouzis's actions in the face of denials and stricken filings demonstrate that Ragouzis continued to raise the same arguments and pursue the same motions despite their repeated rejection, which is consistent with habitual and persistent vexatious conduct.

### 3. Extrajudicial Communications

**{¶24}** R.C. 2323.51(A)(1)(a) provides that "conduct" means the "filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action."

**{¶25}** The approximately 25 threatening and harassing emails that Ragouzis sent to opposing counsel and parties constitute "conduct" under R.C. 2323.52 because they are actions taken "in connection with the civil actions." *Pierce v. Workman*, 2023-Ohio-2022, ¶ 13 (3d Dist.); R.C. 2323.52(A)(1)(a). The emails include threats to weaponize the legal system, threats to file disciplinary complaints, insults, and a mass email sent in violation of the preliminary injunction. This is sufficient to constitute conduct that served to harass or maliciously injure parties and counsel. Further, Ragouzis admitted the authenticity of the emails at the evidentiary hearing. Accordingly, the trial court properly considered extrajudicial communications as relevant evidence supporting the vexatious-litigator designation.

### 4. The Filings Were Unwarranted and Were Imposed for Delay

**{¶26}** The record shows that many of the approximately 49 filings were either denied or stricken. This establishes that the filings were not warranted under existing law and could not be supported by good-faith arguments. Further, at least seven of Ragouzis's filings were explicit motions to stay or continue proceedings filed after 34

of his claims had been dismissed with prejudice, demonstrating conduct imposed solely for delay.

### 5. *There Were No Questions of Fact*

**{¶27}** Ragouzis argues that genuine issues of material fact exist because his filings were warranted and supported by good-faith arguments, his conduct was that of an inexperienced pro se litigant, and he did not intend to harass or maliciously injure anyone. He further asserts that the court's recommendation that he request leave of court before serving discovery justifies his filings. These arguments are meritless and do not create genuine issues of material fact that would preclude summary judgment.

**{¶28}** First, pro se litigants are held to the same standards as represented parties and cannot shield themselves from vexatious-litigator designations through claims of inexperience. *O'Toole v. Hamman*, 2020-Ohio-4753, ¶ 14 (8th Dist.). The fact that a party is pro se does not shield that party from sanctions when the party engages in frivolous conduct. *Id.* Second, the determination of whether conduct is vexatious is governed by an objective standard. *Schmidt*, 2016-Ohio-3472, at ¶ 41 (10th Dist.). This record shows that Ragouzis engaged in frivolous conduct and establishes vexatious conduct by clear and convincing evidence.

**{¶29}** For the foregoing reasons, Ragouzis's sole assignment of error is overruled.

### III. *Conclusion*

**{¶30}** The trial court did not err in concluding that there remained no genuine issue of material fact and that Ragouzis's conduct was vexatious under the definition in R.C. 2323.52(A)(2). We, therefore, affirm the trial court's judgment declaring Ragouzis a vexatious litigator under R.C. 2323.52(A)(3).

Judgment affirmed.

**HENDRICKSON** and **POWELL, JJ.,** concur.

ROBERT A. HENDRICKSON and MICHAEL E. POWELL, of the Twelfth Appellate District, sitting by assignment.

# APPENDIX

KELLY MAHER,

GRANDIN COMPANY LTD,

TINA M. DELORENZO,

BETTY J. BUSEMEYER,

THOMAS P. BUSEMEYER,

SKK HOLDINGS LLC,

MARK WAFLART,

JEFFREY SCHOMBURGER,

GREG CLARE PROPERTIES LLC,

JOHN DENNY & GAYLE DENNY, Trustees of the John & Gayle Denny Living Trust,

FLORETTE B. HOFFHEIMER, Trustee of the Florette B. Hoffheimer Revocable Trust,

STEPHEN MAHER, a.k.a. STEPHEN J. MAHER, Individually and as Successor Trustee U/A/D 1/25/10 Wherein Mark A. Maher, III, is the Grantor,

TAMARA LYNNE FELDMAN,

HERBERT FELDMAN,

TERRI FELDMAN BARR,

MARK J. SHANNON,

MARCUS E. MARGERUM,

GRANDIN PROPERTY MANAGEMENT LLC, d.b.a. GRANDIN PROPERTIES LTD,

ALAN J. EVANS, Trustee under the K.J. Snave Irrevocable Trust Dated September 25, 2007,

JAMES R. CUMMINS, Trustee,

FLORENCE C. MAHONEY, Trustee of the Florence C. Mahoney Revocable Trust Dated June 5, 2008,

MARYLYNN KALBLI,

CATHERINE LYNDAKER,

STEVEN L. LYNDAKER,

SHEREEN E. PALMER,

ALLYSON B. FISH,

JENNIFER KOESTER,

GISELA I. DIERCKS,

ROBERT OFF,

RIVER NORTH PROPERTIES II LLC,

GARY SCHREIBER,

SUZANNE SCHREIBER,

GALE L. HOWE,

RACHEL BARR,

MARY G. BRESLIN,

ROZA ABELEVA,

HOWARD R. RAPPAPORT,

PATRICIA A. PINCIOTTI,

MARY LOUISE GIST, as Trustee under the Mary Louise Gist Trust Agreement Dated June 25, 1997,

15

LAI SUN YEE, Successor Trustee of the Bikuen Yee Trust,

MARGUERITE HOPPERT,

SANDRA CUMMEROW,

WILLIAM CUMMEROW,

BIKUEN YEE, Trustee, William Yee Trust U/A April 16, 1996,

CECILIA WEI PING YEE, Trustee of the Cecilia Wei Ping Yee Revocable Trust Dated AUGUST 29, 2016,

ANNAMARIE CORNELIUS,

MARTIN L. STIEGLER,

MICHELLE KLEIN,

ERIK SCHILLING,

MICHAEL KOESTER,

MARY KOESTER,

THOMAS W. WILLIAMS,

PAULA E. WILLIAMS,

MARY A. ODWYER,

ANNETTE AMANDA NORDYKE,

LANA M. PIAZZA,

SUSAN M. TABLER, Trustee of this Susan M. Tabler Living Trust Dated 10/16/89,

KATHERINE L. KOPPENHOEFER,

ROBERT L. SCHNEIDER,

ALBERTA SCHNEIDER,

ERIC P. TOTH,

HOLLY M. SHAFER,

MICHAEL S. RIPORTELLA,

SHIRLEY A. RIPORTELLA,

DEBORAH B. FAESSLER,

JACQUELYN S. MISKIE,

STEFANIE HOLLER,

KAREN AICKLEN,

DONALD N. AICKLEN,

BARBARA SHAPIRO,

THOMAS A. JOLLEY, III,

SUSAN COLLINS,

EVA M. VEDDERN,

JUDITH TURNER-YAMAMOTO,

ROBERT E. SEERY,

MARY ELLEN SEERY,

LYDIA S. SIMON, Trustee under a Restated Trust Agreement Dated February 6, 1998,

SARA J. SKOLNICK, Trustee of the Sara J. Skolnick Trust Agreement Dated December 16, 1996,

KATHLEEN MARIE VAN KIRK,

HUGO TOSTADO,

SANDRA SOMMER,

MARY HATT,

EARL HATT,

ANJELICA R. SITEK,

JEAN E. FEINBERG,

TERRY GRUNDY,

JODINE M. GRUNDY,

CAROL J. DOLZINE,

KATRIN BOHLKE AND MANFRED BOHLKE, Co-trustees of the Katrin Bohlke Trust U/A Dated January 21, 1997,

INGRID M. WALLNER RITSCHEL, Trustee of the Wolfgang A. Ritschel Trust U/A/D 9/11/09,

DANIEL L. MOTT,

NOEL KEEFER,

MYRLE E. SIEGER, III,

NIRANJANA NATARAJAN,

LALGUDI NATARAJAN,

ANNE F. LIEB,

LI LI ZHAO,

XIN ZHAO,

LAANI A. WUEST,

DAVID HARSH,

ROBERT BARR,

LYNNE S. FRIEDLANDER, Trustee of the Lynne S. Friedlander Second Amended and Restated Trust U/A DTD August 4, 2022,

JOHN HOWARD KLING AND JULIA ANN KLING, Trustees, or any Successors in Trust, Under the Kling Family Revocable Trust Dated MAY 8, 2020,

DAVID J. WOHLFEIL,

NANCY BELL FIELD,

MATTIE J. WADDLE,

BRITTANY WADDLE,

MARGARET GANULIN,

DANIELLE M. BAUMANN,

THOMAS CONWAY,

TERESITO ALQUIZOLA,

FLORENDA ALQUIZOLA,

PURPLE SUGAR LLC,

WILLIAM ATKINS,

KATHRYN COPELIN FRENCH, Trustee of the Kathryn Copelin French Revocable Living Trust Dated August 11, 1993,

MICHAEL S. DOMINGUEZ,

ILAN SHOR WITTSTEIN,

MARIAN MULHOLLAND WITTSTEIN,

PETER J. OSHER, as Successor Trustee of the Trust Agreement of Muriel S. Osher Restated in its Entirety January 5, 2009,

JAIME L. STOVERING,

ELEANOR J. LEAVELL,

FUMIE NISHIYAMA,

MARY SCHOEN,

SARAH K. AICKLEN,

17

KEVIN J. WELLING AND MARJORIE K.B. WELLING, Co-trustees of the Kevin J. Welling Living Trust Dated February 3, 1997,

JOYCE R. BORKIN,

BRITTANY HEUER,

JOSEPH E. SCHWERING, JR.,

FRANKE E. KALLMEYER,

KATHLEEN KALLMEYER,

HARISHCHANDRA RAMINENI,

ANNE BOLDUC POWER,

ELIZABETH A. THOMAS,

ANN M. LAFFERTY,

JUDITH MITCHELL,

KEI OKADA,

MAKI OGAWA-HOPPER,

ALAN R. STUART,

SUSAN STUART,

BRIAN M. WILMES,

ANITA SUMMERS-MUIR,

MARY CHRISTINE ANDERSON,

SHENAN MURPHY,

STEPHEN HAYUTIN,

MARNIE HAYUTIN,

JOHN P. SCHWARBERG,

JENNIFER SCHWARBERG,

MARY G. GUGINO, as Trustee of MGG Revocable Trust U/T/A Dated April 12, 2021,

SANDRA Y. LEFTWICH AND HOWARD M. LEFTWICH, Trustees of the Sandra Y. Leftwich Restated Revocable Trust Agreement Dated November 12, 2009,

K. RICHARD B. NIEHOFF & NANCY J. NIEHOFF, Co-trustees under the K. Richard B. Niehoff & Nancy J. Niehoff Primary Residence Trust Agreement,

RODERIC SUMMER,

ALAN R. STUART,

   and,

ART FLETCHER MCINTIRE AND LILI KLAENE MCINTIRE, Trustees, or their Successors in Trust, under the McIntire Living Trust Dated June 30, 2008.

18